J. Courtney McGroarty, J.
This is an action in ejectment. Plaintiff and defendant A. A. Gold Inc. entered into an agreement of lease dated February 1, 1972 wherein and whereby the plaintiff, as lessor, leased to defendant A. A. Gold Inc., as lessee, certain property located at the corner of Tillary and Gold Streets, in the Borough of Brooklyn, City of New York, which said premises had previously been used as a gasoline service station. The premises are not described in the lease by metes and bounds, except on the corner of Tillary and Gold Streets, and then described as follows: “ Excepting and reserving, however, from the foregoing demise that portion of the premises on which there is now or may hereafter be located and installed a public telephone booth, it being expressly understood and agreed by and between lessee and lessor that this lease is subject to a right of access to such telephone booth by the telephone company which owns the same and a right of access to and use by. the public in common with lessee and lessee’s customers of such public telephone as well as a further right to the telephone company which owns such telephone to maintain on the demised *1051 premises a sign or signs customarily displayed by snob telephone company to advise the public of the availability of a public telephone booth; provided, however, that such sign or signs shall be so located as not to interfere with the service station business carried on at the demised premises * * * together with the buildings, improvements, fixtures, equipment and facilities owned or leased by lessor, now located on said premises or which lessor may hereafter, during the continuance of this lease, erect or place thereon.”
Notwithstanding the fact that the instrument of lease does not accurately describe the demised premises, the defendant in opposing plaintiff’s application for a preliminary injunction against it does not question the description of the property alleged in the complaint as ‘ ‘ located at the corner of Tillary and Gold Streets in Brooklyn, New York
The lease provides that “ Unless sooner terminated as hereinafter provided, this lease shall remain in force and effect for an initial period beginning March 1, 1972 and ending February 28,1973 and thereafter from year to year, but subject to termination by either party at the end of such initial period or any subsequent year on ten days’ prior written notice
It has been established that the lessor gave 10 days’ notice that the lease would be terminated on February 28, 1974 in accordance with the terms and provisions thereof.
Simultaneously with the execution of this lease and on February 1,1972, the plaintiff and said named defendant entered into an agreement of sale prepared by plaintiff wherein the plaintiff, as seller, agreed to sell to the said named defendant, located at Tillary and Gold Streets, Brooklyn, New York, as purchaser, and the purchaser agreed to buy, to receive, and pay for plaintiff’s products as set forth in said agreement. The point of delivery is designated as 11 Tillary & Gold Streets, Brooklyn, New York.” The prices were f. o. b. purchaser’s place of business. Delivery by seller’s truck and terms of payment were specified. The agreement of sale was subject to the provisions printed on the reverse side thereof except such as by their terms are inapplicable. The duration of the agreement was from March 1, 1972 to February 28, 1973 and thereafter from year to year. However, it was provided therein that either the purchaser or the seller may terminate the agreement at the end of the first year or any succeeding year by giving written notice to the other party thereto at least 60 days prior to the date upon which such termination shall become effective. The agreement of sale also provided that either party may terminate the agree *1052 ment “ forthwith ” by written notice upon failure of the other party to perform strictly any of the obligations imposed upon the other hereby. There is no allegation in this complaint of any basis upon which forthwith termination may be predicated. The agreement then provides: “ (6) d. If this agreement covers delivery at premises leased by Seller to Purchaser, it shall automatically terminate upon termination or cancellation of such lease.”
Obviously, it is the clear intention of the parties that the lease and the agreement of sale shall be read together and, that, but for the provision in paragraph (6) d of the agreement of sale, failure to give 60 days’ prior notice of termination of the sales agreement would be fatal to its termination, except for termination of the lease on the giving of 10 days’ notice of termination. The provision of the agreement of sale referred to in the opinion of the court co-ordinates termination of the agreement of sale with cancellation of the lease.
The defendant, in opposing the motion, argues that the lease and the agreement of sale, collectively referred to by it, is a franchise agreement which must be read together and points out the discrepancy between the 60 days’ notice of termination in the agreement of sale and the 10 days’ notice of termination in the lease. Defendant makes no reference to the provision in paragraph (6) d of the agreement of sale. Defendant therefore claims that the two agreements when read together must be construed as establishing a franchise relationship with all the rights and obligations of a franchisor and franchisee attendant thereto, and refers to the New Jersey Franchise Practices Act and to the case of Shell Oil Co. v. Marinello (120 N. J. Super. 357). In that case the plaintiff brought a proceeding to dispossess defendant lessee on the ground that the plaintiff had terminated defendant’s contract and lease at the end of its term. The defendant had been the holder of a franchise from the plaintiff for 13 years prior to said termination by the plaintiff. The court held that the.“ letter ” of the New Jersey Franchise Practices Act could not be applied to this fact-pattern, because all preexisting franchises were exempted from its application, but nevertheless found little difficulty in adapting its 61 spirit,” saying (p. 375): “ In the performance of [their] function legislative judgments may be and frequently are highly persuasive in pointing out to the courts the direction in which they ought to go * * * in the pursuit of this judicial goal.”
However, the court (p. 372) took a much more pragmatic view of the contract relationship than that taken in Division; of Triple *1053 T Serv. v. Mobil Oil Corp. (60 Misc 2d 720): “ It should be apparent that we are not dealing here with a traditional landlord-tenant relationship but with what is essentially a form of commercial venture — a franchise — for the marketing of Shell’s products, in which both parties have a common interest and profit from activities of the other. Shell’s interest in these premises is obviously more than the interest of a landlord, and Marinello’s interest transcends that of a tenant — his investment and very livelihood depend on his remaining within the good graces of Shell’s local employees ”. The court then went on to consider the history of the relationship between the parties, their respective bargaining positions, their course of conduct over an extended period of time, and what could be characterized as reasonable expectations of the parties in the atmosphere thus created. The court implied a covenant of renew-ability on the authority of Henning sen v. Bloomfield Motors (32 N. J. 358).
In Division of Triple T Serv. v. Mobil Oil Corp. (supra), plaintiff, as lessee of an automobile service station, brought an action for an injunction to restrain the defendant lessor from terminating a (franchise) agreement. There was a retail dealer agreement and service station lease entered into for a term of three years. The dealer agreement characterized the plaintiff as “ buyer ” and defendant as “ seller ” of the defendant’s products, with an agreement as to maximum and minimum purchases to be made by the plaintiff in each year. At the end of the term, defendant notified plaintiff according to the provisions of the contract that it had elected to terminate the lease and dealer agreement. Plaintiff based his action on the argument that such termination by the defendant was not in “ good faith ” as required by the Uniform Commercial Code.
Subdivision (1) of section 2-302 of the Uniform Commercial Code provides that: “ (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.”
Justice Gagliardi in Division of Triple T. Serv. v. Mobil Oil Corp. (supra, p. 728) considered the application of this provision and the liberal application of the provisions of the Uniform Commercial Code but pointed out that the hitch was the lease and the terms thereof, stating: “ However, the code provisions *1054 governing sales are limited in scope to ‘ transactions in goods ’ * * * and by no mean application of judicial sophistry can the lease of real property be deemed to fall within its intendment.” and concluded that since the termination of the lease was not subject to any commercial standards imposed by the Uniform Commercial Code, he saw no reason why the termination of the lease should not “ infect,” as it were, the dealer agreement as well, that is to say, that the two contracts were not severable.
Justice Gagliardi’s decision in Division of Triple T Serv. v. Mobil Oil Corp. (supra), has been criticized in a law review article which in effect pointed out that the court was apparently unaware that site control is a prime weapon of franchisors, whether through sublease or collateral pledge of the lease, and that these property rights should be subordinated to the interest of the franchisee to whom the franchisor sold a right to do business (see H. Brown, Franchising — A Fiduciary Relationship, 49 Tex. R. Rev. 650 [1972]). The court cannot overlook the fact that by their terms, the agreement of sale and the lease are subject to termination on the giving of notice as provided in the lease. At the core of defendant’s position and the reasoning of the cases cited to support it, is the concept of the “ contract of adhesion ” (see Henningsen v. Bloomfield Motors, supra). Thus, the syllogistic semantics engaged in by various courts to establish rights in the lessee franchisee’s behalf other than those, he contracted for are based upon the premise that he was the weaker party, at the mercy of the large, ruthless corporation. (See, e.g., Shell Oil Co. v. Marinello, supra [implied covenant of renewability]; Mobil Oil Corp. v. Rubenfeld, 72 Misc 2d 392 [fiduciary duty of franchisor]; Jirma Ltd. v. Mister Donut of Canada, 3 Ont. 629 [1970] [fiduciary duty of franchisor] ; Shell Oil Co., v. Federal Trade Comm., 360 F. 2d 470, cert. den. 385 U. S. 1002 [violation of antitrust laws]; Atlantic Refining Co.v. Federal Trade Comm., 381 U. S. 357 [violation, of antitrust laws],) The court in this case will not indulge itself in such fantasies. It is not its function to guarantee every businessman’s success in his enterprise, or to protect him from entering into improvident or ill-advised contracts, or to relieve him from contracts freely negotiated, that prove to he onerous. It cannot be denied that the vitality of our marketplace is derived to a great degree from the time-honored caveat that the individual must enjoy the right of “ freedom of contract ” subject only to the obvious limitation of legality, fraud and lack of capacity. In the case of Printing & Numerical *1055 Registering Co. v. Simpson (1875, L. R. 19 Eq. 462, 465) the court said: “ it must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting * * * You are not lightly to interfere with this freedom of contract.” This doctrine lost none of its force when it came to our country. In Northern Pacific Ry. Co. v. Twohy Bros. Co. (95 F. 2d 220, 223), it was said: ‘1 However, the gain to one party or the other is not a factor in construing the contract, [the railway’s] motive, whether gain or mere petulance of its officers, would not affect its right * * * The question here is determined within the four corners of the railway’s form contract ”.
Defendants claim that they have not been selling plaintiff’s merchandise or using plaintiff’s name in any respect. However, they are in possession of plaintiff’s property after termination of the lease according to its terms.
Accordingly, plaintiff is entitled to a judgment that it is the owner in fee of the said premises, that it is entitled to recover immediate possession thereof, that the defendants be enjoined as prayed for, and that they be removed from the said premises forthwith.