PICTURE LAKE CAMPGROUND,
INC., etc., et al.

v.

HOLIDAY INNS, INC., etc.

Civ. A. No. 79–0972–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 13, 1980.

Charles F. Witthoefft, Richmond, Va., for plaintiffs.

Thomas G. Slater, Jr., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

### I

Picture Lake Campground, Inc. (Picture Lake), a Virginia Corporation and a franchisee in the Trav–L–Park system, and First Management Corporation (First Management), another Virginia corporation, bring this action against Holiday Inns, Inc. (Holiday Inns), a Tennessee Corporation, and the franchisor of the Holiday Inn Trav–L–Park system, for damages with respect to a Trav–L–Park franchise transaction.[1]

In September of 1971 First Management applied to Holiday Inns for a franchise in the Holiday Inn Trav–L–Park system, a franchised recreational vehicle campground system offering camper rental spaces, recreation, food, and other accommodations, and using Holiday Inns trade names, trademarks, and service marks. A Commitment Agreement dated 29 October 1971 was issued to First Management and the application was approved by Holidays Inns by letter dated 2 November 1971. The Commitment Agreement, which required the fulfillment of certain conditions for constructing

---

1. Plaintiffs assert federal jurisdiction pursuant to 28 U.S.C. § 1332.

and equipping the Trav–L–Park, was executed by First Management and was returned to Holiday Inns in January 1972 along with a letter dated 13 January 1972 requesting that the License Agreement be issued in the name of Picture Lake Campgrounds, Inc. In July, 1972 Picture Lake and Holiday Inns executed a written License Agreement and the Holiday Inn Trav–L–Park of Petersburg, Virginia, was opened to the public.

Plaintiffs allege that Holiday Inns has breached the License Agreement and has effectively discontinued the development of the Trav–L–Park franchise system, thus destroying its value, in violation of representations made by Holiday Inns to plaintiffs, thereby causing plaintiffs considerable damage. Specifically, the complaint sets forth seven grounds for recovery:

1. Count One: breach of contract and breach of warranty;

2. Count Two: tortious interference with business;

3. Count Three: conspiracy to injure business;

4. Count Four: negligent breach of contract;

5. Count Five: fraud and misrepresentation;

6. Count Six: violations of the Virginia Retail Franchising Act; and,

7. Count Seven: breach of fiduciary duty.

The parties are presently before the court pursuant to three motions to dismiss filed by Holiday Inns. Respective counsel having briefed the issues raised thereby, the motions are ripe for disposition.

## II

Holiday Inns filed a motion to dismiss First Management from Counts One, Two, Three, Four and Six of plaintiffs' complaint for lack of standing. The legal issues posed with respect to each count will be considered seriatim.

### a. *Count One*

The gravamen of Count One is that "Holiday Inns by its actions and inactions has breached and violated the License Agreement, and its various warranties and representations, in several material respects and has effectively abandoned the Trav–L–Park system and the remaining licensees." In support of its motion to dismiss First Management from Count One for lack of standing, Holiday Inns has referred the Court to the general rule that in order to have standing to sue on a contract, one must either be a party to the contract, or be in privity with the contract.[2]

It is Holiday Inns' contention that First Management is not a party to nor is it in privity with the License Agreement and, therefore, it should be dismissed as to Count One for lack of standing. Plaintiffs' response to this contention is twofold. First, plaintiffs assert that in Count One First Management has stated a cause of action for breach of the Commitment Agreement. Secondly, while plaintiffs concede that First Management is not a party to or in privity with the License Agreement, plaintiffs assert nevertheless that First Management has standing to sue as a third party beneficiary of the License Agreement.

With respect to the cause of action for breach of the Commitment Agreement, the Court notes that Paragraph 18 of the complaint contains a specific allegation as

---

2. See *Thaxton v. Travelers Indemnity Co.*, 555 S.W.2d 718, 719–20 (Tenn.1977); *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Association*, 219 Va. 1001, 254 S.E.2d 61, 62 (1976).

· The parties are concerned as to the applicable law with respect to Count One of plaintiffs' complaint. It appears that Picture Lake and Holiday Inns stipulated in the License Agreement that the agreement was governed by Tennessee law. While it may be necessary for the Court to determine the conflict of laws issue at some later point in the controversy, it is not necessary at this point, as the motion before the Court can be disposed of with reference to general principles of contract law applicable in Tennessee and Virginia. See, e. g., *Thaxton v. Travelers Indemnity Co., supra*, at 719–20; *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n, supra*, 254 S.E.2d at 62. See generally 59 Am.Jur.2d Parties § 35 (1971).

to Holiday Inns' breach of the License Agreement, but it contains no such allegation as to the Commitment Agreement. The mere references to the Commitment Agreement in Paragraph 17 and to the breach of various warranties and representations in Paragraph 8 are insufficient to state a breach of the Commitment Agreement. Accordingly, with respect to the Commitment Agreement, First Management has failed to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6).

■ With respect to the third party beneficiary theory, the parties have correctly identified the ultimate issue as to whether the parties to the License Agreement, Picture Lake and Holiday Inns, intended to benefit First Management through the making of the contract.[3] The Court is constrained to point out, however, that Count One is devoid of any allegations as to First Management's right to recover from Holiday Inns as a third party beneficiary of the License Agreement. Indeed, plaintiffs make this allegation for the first time in their Brief in Opposition to Holiday Inns' motion to dismiss. Until plaintiffs' complaint is formally amended to reflect the third party beneficiary claim, First Management has not stated a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6).

■ Since First Management is not a party to nor in privity with the License Agreement, and since First Management has not otherwise stated a claim for which relief can be granted, First Management is DISMISSED from Count One of the complaint with leave to amend.

### b. Count Two

■ Count Two alleges a common law claim for tortious injury to business and property.[4] In support of its motion to dismiss First Management from Count Two for lack of standing, it is Holiday Inns' contention that First Management and Picture Lake are two corporations engaged in separate businesses: First Management is in the business of owning and leasing the Picture Lake Property to Picture Lake, and Picture Lake is in the business of leasing and operating the Holiday Inn Trav–L–Park of Petersburg. The allegations in Count Two, Holiday Inns further contends, could directly injure only the Trav–L–Park business of Picture Lake and could only indirectly or consequentially injure First Management's business of owning and leasing the Picture Lake property.

While admitting that First Management and Picture Lake are engaged in distinct businesses, plaintiffs argue that "[t]he business and property interest of First Management and Picture Lake are completely intertwined and were and are dependent upon the success of the Trav–L–Park System." Moreover, plaintiffs argue that First Management, as the owner of the Picture Lake property, has a property interest at stake which has been injured by the conduct of Holiday Inns, thereby affording First Management standing to sue.

■ The Court is unconvinced by plaintiffs' argument that First Management is entitled to sue for tortious injury to business or property because the business and property interest of First Management and Picture Lake are allegedly intertwined and

**3.** See Graybar Electric Co. v. Doley, 273 F.2d 284, 289 (4th Cir. 1959); McCloskey v. Wright, 363 F.Supp. 223, 229 (E.D.Va.1973); McCall v. Towne Square, Inc., 503 S.W.2d 180, 183–4 (Tenn.1973); Norfolk–Portsmouth Newspaper, Inc. v. Stott, 208 Va. 228, 156 S.E.2d 610, 612–13 (1967). See generally 4 A. Corbin, Contracts § 776 (1951).

**4.** Plaintiffs allege that Holiday Inns wrongfully dismantled the Trav–L–Park system, which course of conduct had the direct result of damaging and interfering with the business of Pic-

ture Lake and First Management " . . . by causing the substantial curtailment of referral or reservation business, by substantially decreasing the value of Picture Lake property, by causing losses from the operation of the business, by causing lost profits which would have otherwise been received from the business, by placing at risk the conditional use permit under which the business operates in Dinwiddie County, and by placing at risk the permanent financing on the project . . . ." Complaint, ‘‘ 22 and 23.

dependent upon the success of the Trav–L–Park system. With respect to the Trav–L–Park franchise, the officers and directors of First Management determined that two corporations were necessary, one to own and lease the Picture Lake property, and one to manage and operate the Trav–L–Park. Whether that determination was made for liability or tax purposes is irrelevant. Once the decision was made, plaintiffs were bound by the disadvantages as well as the advantages of separate incorporation.

■ As the Fourth Circuit stated in *Terry v. Yancey*, 344 F.2d 789 (4th Cir. 1965):

A corporation is, of course, an entity separate and apart from its officers and stockholders, and where an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages.

*Id.* at 790.

The Court believes that the logic of this statement applies with equal force to a sister corporation as well as to a stockholder of the corporation. Thus, the Court concludes that First Management has no independent standing to sue simply because the business and property interest of First Management and Picture Lake are allegedly intertwined and dependent upon the success of the Trav–L–Park system.

■ To have standing to sue for damages for tortious injury to business or property, First Management must have an interest in the business or property allegedly injured. *Keepe v. Shell Oil Co.*, 220 Va. 587, 590, 260 S.E.2d 722, 724 (1979). In addition, just as a stockholder of a corporation has no standing to sue third parties for wrongs inflicted by those third parties upon the business and property interest of the corporation, it is evident that First Management has no standing to sue Holiday Inns for wrongs allegedly inflicted by Holiday Inns on the business or property interest of Picture Lake.[5] Moreover, the Court believes that First Management has no standing to sue for injuries inflicted indirectly or consequentially upon the business or property interest of First Management as a result of the alleged tortious conduct of Holiday Inns towards Picture Lake. The parties have not cited and the Court is not aware of any authority to the contrary.

Applying these principles to Count Two of the complaint, the Court concludes that plaintiffs have not alleged that First Management has suffered any direct injury to its business and property interest in the Picture Lake Property as a result of the alleged tortious conduct of Holiday Inns.[6] This being the case, First Management is DISMISSED from Count Two of the complaint with leave to amend.

#### c. Count Three

■ Count Three is essentially the same as Count Two except that plaintiffs allege that the conduct of Holiday Inns alleged in Count One and Two also constitutes a violation of Va.Code § 18.2–499 (Repl. Vol. 1975) and affords plaintiffs a remedy pursuant to Va.Code § 18.2–500 (Repl. Vol. 1975). Section 18.2–499(a) makes it illegal for two or more persons to conspire "for the purpose of wilfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . ." A person injured by such a conspiracy is entitled to sue for treble damages and the cost of the suit, including attorneys fees, pursuant to § 18.2–500(a). The purpose of this statutory action is to provide a remedy for

---

**5.** *See generally, Mullins v. First National Exchange Bank of Virginia*, 275 F.Supp. 712, 721 (W.D.Va.1976); *Keepe v. Shell Oil Company, supra*, 260 S.E.2d at 724; 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, §§ 5911–13 (rev. perm. ed. 1980).

**6.** Although plaintiffs allege that the value of the Picture Lake Property has substantially decreased as a result of the actions of Holiday Inns, the Court views this as an indirect injury to First Management in the same sense that a decrease in the value of a shareholder's stock, as the result of tortious interference with a corporation's business, is deemed to be an indirect injury and not actionable by the individual stockholder. *See* 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5913 (rev. perm. ed. 1980).

wrongful conduct directed towards one's business, including injury to one's property interest. *See Federated Graphics Co., Inc. v. Napotnik*, 424 F.Supp. 291, 293 (E.D.Va. 1976). *See generally Keepe v. Shell Oil Company, supra*, 260 S.E.2d at 724.

 It is Holiday Inns' contention that First Management should be dismissed from Count Three for lack of standing because First Management has failed to allege any acts or conspiracy which would directly damage the business of First Management of owning and leasing the Picture Lake Property.

The Court has heretofore concluded that First Management has no standing to sue on a common law claim for tortious injury to business and property. The only significant difference the Court perceives between the common law claim and the statutory action provided under § 18.2–500(a) is the element of conspiracy in the latter. Although Count Three contains allegations of such a conspiracy, the Court concludes that these allegations, if true, would directly affect only the business of Picture Lake of managing and operating the Trav–L–Park and not the business of First Management of owning and leasing the Picture Lake Property. For the reasons stated more fully with respect to Count Two, Holiday Inns' motion to dismiss First Management from Count Three for lack of standing is GRANTED and plaintiffs are GRANTED leave to amend.

### d. Count Four

Count Four alleges a cause of action for negligent conduct in carrying out defendants' duties under the License Agreement with respect to the unilateral dismantling of the Trav–L–Park system by Holiday Inns. It is Holiday Inns' contention that First Management lacks standing to sue for negligent breach of contract because First Management is not a party to or in privity of the License Agreement.

 It is the general rule that no cause of action in tort can arise from the breach of a duty existing by virtue of a contract unless there is privity of contract between the defendant and the person injured.[7] Although the general rule is subject to exceptions,[8] some of which have been adopted in Virginia,[9] none are applicable here.

Several Supreme Court of Virginia decisions have intimated approval of the general rule. For example, in *Spence & Neff v. Norfolk & Western Railway Co.*, 92 Va. 102, 22 S.E. 815 (1895), the Supreme Court of Virginia articulated the rationale for the cause of action of negligent breach of contract as follows:

> In the case of *Boorman v. Brown*, 3 Adol. & E. (N.S.) 511, 43 E.C.L. 843, 850, Chief Justice Tindal, in delivering the opinion of the court said: "That there is a large class of cases in which the foundation of the action springs out of privity of contract between the parties, but in which, nevertheless, the remedy for the breach or nonperformance is indifferently either assumpsit or case upon tort, is not disputed. Such actions are against attorneys, surgeons, and other professional men for want of competent skill or proper care in the service they undertake to render; actions against common carriers, against shipowners on bills of lading, against bailees of different description; and numerous other instances occur in which the action brought in tort or contract, at the election of the plaintiff." The principle in all these cases would seem to be that the contract creates a duty, and the neglect to perform the

---

7. *See* W. Prosser, *Handbook on the Law of Torts*, 622–23 (4th Ed. 1971); 57 Am.Jur.2d, *Negligence*, § 48 (1971); 74 Am.Jur.2d, *Torts*, § 52 (1974).

8. *See* 57 Am.Jur.2d *Negligence*, § 49 et seq. (1971); 74 Am.Jur.2d, *Torts*, § 52 (1974).

9. *See, e. g., Smith v. Allen–Bradley Co.*, 371 F.Supp. 698, 701 (W.D.Va.1974) (lack of privity is not a defense to actions to recover damages arising out of defective improvements to real property); Va.Code § 8.2–318 (Added Vol. 1965) (lack of privity is no defense in action against manufacturer or seller of goods).

duty, or the nonfeasance, is a ground of action upon a tort.

22 S.E. at 817.[10]

■ If the action for negligent breach of contract springs out of privity of contract between the parties, then the cause of action is limited to those in privity of contract. The Court predicts that the Supreme Court of Virginia would so hold if confronted with the issue. *Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978). Since First Management has conceded in its Brief in Opposition that it is not a party to or in privity with the License Agreement, Holiday Inns' motion to dismiss First Management from Count Four for lack of standing is GRANTED and plaintiffs are GRANTED leave to amend.

### e. *Count Six*

■ In Count Six, plaintiffs allege that the acts of Holiday Inns:

amount to an unlawful cancellation of the License Agreement without reasonable cause and/or the use of undue influence by Holiday Inns to induce Picture Lake and First Management to surrender their rights under the license agreement, in violation of the Virginia Retail Franchising Act, § 13.1–557 et seq., the Code of Virginia (1950), as amended.[11]

Holiday Inns challenges First Management's standing to sue under the Virginia Retail Franchising Act on the grounds that First Management is not a "franchisee" as that term is defined in the Act.

Section 13.1–559, the definitional section of the Virginia Retail Franchising Act provides in pertinent part:

10. *See also Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956); *W. W. V. Co. v. Black*, 113 Va. 728, 730, 75 S.E. 82, 83 (1912); *Ferrill v. Brewis' Adm'or*, 25 Gratt. (66 Va.) 765, 767–68 (1875).

11. Section 13.1–564 of the Virginia Retail Franchising Act states:

It shall be unlawful for a franchisor to cancel a franchise without reasonable cause or to use undue influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise.

As used in this Chapter, unless the context otherwise requires, the term:

. . . . .

(c) "Franchisee" means a person to whom a franchise is granted.

Va. Code § 13.1–559(c) (Repl.Vol.1978).

First Management, in its Brief in Opposition, concedes that it is not a "franchisee' within the meaning of § 13.1–559(c) and for this reason, First Management does not object to the dismissal of its cause of action under Count Six. Accordingly, Holiday Inns' motion to dismiss First Management from Count Six is GRANTED.

### III

Count Five of plaintiffs' complaint alleges a cause of action for fraud and misrepresentation with respect to the franchise transaction. Holiday Inns moved the Court to dismiss Count Five, pursuant to Fed.R. Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. The basis of Holiday Inns' motion is that plaintiffs have failed to comply with the specificity requirement of Fed.R.Civ.P. 9(b) in four particulars:

That is, plaintiffs failed to allege (1) the content of the alleged misrepresentations (2) wherein the alleged misrepresentations were false, (3) the time and place the alleged misrepresentations were made, and, (4) what persons made the alleged misrepresentations and to whom.

Rule 9(b) states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Va. Code § 13.1–564 (Repl.Vol.1978).
Section 13.1–571(a) provides the following civil remedy: ·

Any franchisee . . . who has suffered damages by reason of any violation of § 13.1–564 may bring an action against its franchisor to recover the damages sustained by reason thereof. Such franchisee, if successful, shall also be entitled to the cost of the action, including reasonable attorneys fees.

Va.Code § 13.1–571(a) (Repl.Vol.1978).

Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Professor Moore has stated the general interpretation of the phrase "the circumstances constituting fraud or mistake shall be stated with particularity as follows":

Normally this means that the pleador must state the time, place and content of the misrepresentation, the fact misrepresented, and whether it was obtained or given up as a consequence of a fraud.

2A Moore's Federal Practice, ¶ 9.03, at 920–924 (2d Ed.1979). Professors Wright and Miller have reached a similar conclusion in their treatise. *See* Wright & Miller, Federal Practice and Procedure, § 1297 at 403–04 (1969).

Professor Moore has further stated that Rule 9(b) must be read in conjunction with the notice pleading requirement of Fed.R. Civ.P. 8.

The requirement of particularity does not abbrogate Rule 8, and it should be harmonized with the general directives in subdivision (a) and (e) of Rule 8 that the pleading should contain a "short and plain statement of the claimed defense" and that each averment should be "simple, concise and direct." Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter.

2A Moore's Federal Practice, *supra*, at 9–28 to 9–30 (footnotes omitted). A similar opinion is stated by Professors Wright and Miller:

Of primary importance in understanding the particularity requirement of Rule 9(b) is the recognition that it does not render the general principles set forth in Rule 8 entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other. . . . Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.

Wright & Miller, Federal Practice and Procedure, *supra*, at 406–07 (footnotes omitted). *See also Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975).

■ Therefore, when a party challenges the sufficiency of a complaint under Rule 9(b) it is the duty of the Court to balance the pleading requirement of notice pleading under Rule 8 against the requirement of particularity under Rule 9(b). *See In Re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation*, 467 F.Supp. 227, 250 (W.D.Tex.1979) (involving analysis of Rule 9(b) in securities fraud case). In attempting to strike the balance between these rules, the Court finds instructive the following passages from the opinion of Judge Higginbotham in *In Re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation, supra:*

Courts have not struck a balance between these rules by devising an easily applied test. Indeed, despite the many applications of Rule 9(b), no standard has evolved dictating precisely how much notice the Rule requires. No court has enunciated a test which casts light beyond the facts before it. This is not surprising. The nature of each individual case will necessarily determine the degree of specificity under which Rule 9(b) is appropriate.

The focal point of a Rule 9(b) inquiry should be whether, given the nature and facts of the case and circumstances of the parties, the pleading in question is sufficiently particular to satisfy the purposes of Rule 9(b).

. . . . .

Courts must be sensitive to the balancing exercise which Rule 9(b) requires. The rule invites abuse by both plaintiffs and defendants. An unbalanced application on the one hand gives plaintiffs unchecked access to the *in terrorem* power of the federal discovery mechanism or on the other hand allows defendants by sophistical claims of ignorance, to plow meritorious claims into stumps. . . .

The enforcement of Rule 9(b) should not become a throwback to the Field Code or

a tool to require plaintiffs repeatedly to redraft pleadings despite defendants' pre–existing full knowledge of the matters which plaintiffs' pleading addresses. Therefore, if under the circumstances of the case it is apparent that even though plaintiffs' pleadings are vague, the defendants do in fact have notice of the matters of which plaintiffs complain, a strict application of Rule 9(b) can serve no purpose.

*Id.* at 250–51 (citations and footnote omitted).

With these observations in mind, the Court now turns to Count Five of the plaintiffs' complaint. The complaint alleges that during several meetings between representatives of Holiday Inns and the owners of the Picture Lake property:

. . . various representations were made by Holiday Inns concerning, among other things, the favorable market conditions for recreational vehicle campgrounds; Holiday Inns' concept of a high quality, expanding system of franchise campgrounds, with developmental, promotional and maintenance support provided by the experienced Holiday Inns corporation; the suitability of Picture Lake as a site for such a campground; and, the substantial income potential of the Picture Lake property as a part of the system developed under the guidance and control of Holiday Inns.

*Complaint,* ¶ 5.

These representations, the complaint alleges, were made during initial meetings between the parties and on a continuous basis thereafter. *Complaint,* ¶¶ 17 & 31. The plaintiffs allege in their complaint that these representations were made with the intent to deceive and defraud plaintiffs, that such representations were false, and were known by Holiday Inns to be false. *Complaint,* ¶ 31. To support their allegation that these representations were false, the plaintiffs allege

. . . that Holiday Inns did not commit its best efforts to cause the Trav–L–Park system to succeed and expand, did not provide the licensees of the Trav–L–

Park system with the necessary support and expertise in areas such as promotion and reservations, and, in fact, Holiday Inns proceeded, unilaterally and in concert with others, to destroy the system by encouraging licensees to surrender their licenses, and assisting some of them to become associated with competing franchise campgrounds, all without notice of any kind to Picture Lake or First Management of Holiday Inns' decision to abandon the Trav–L–Park system or its actions in furtherance of that decision.

*Complaint,* ¶ 31.

In reliance upon the representations, the complaint alleges that plaintiffs paid license fees and other sums to Holiday Inns to continue as part of the Trav–L–Park system; that plaintiffs borrowed $350,000 for the purpose of constructing and operating the campground facility; and that plaintiffs did, in fact, construct the campground facility according to the plans and specifications of Holiday Inns. *Complaint,* ¶¶ 8, 10 & 32.

■ Although the complaint may not be an example of lucidity in pleading, given the nature and facts of the case, and the circumstances of the parties, the Court believes the requirements of Rule 9(b) can be met by requiring plaintiffs to state with specificity wherein each of the representations alleged in ¶ 5 of the Complaint was false, giving in each instance the true state of facts. Such allegations shall be filed within ten days of the entry hereof. The motion to dismiss Count 5 is DENIED.

### IV

■ Count Seven of plaintiffs' complaint alleges that Holiday Inns has breached its fiduciary duties of good faith, loyalty and honesty owed to Picture Lake and First Management. It is plaintiffs' contention that such a fiduciary duty may exist in a franchise relationship and, when violated, is actionable under Virginia law. Holiday Inns has moved to dismiss Count Seven pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, to dismiss

First Management from Count Seven for lack of standing because First Management is not a "franchisee" of Holiday Inns.[12]

At the outset, the Court notes that no Virginia court has recognized a fiduciary duty in the franchise context or a cause of action against a franchisor for breach of a fiduciary duty. Therefore, this Court must use its informed judgment in predicting what the Supreme Court of Virginia would decide in this case. *Nature Conservancy v. Machipongo Club, Inc., supra.*

Apparently this Court's decision in *Principe v. MacDonald's Corporation,* 463 F.Supp. 1149 (E.D.Va. 1979), is the only reported decision dealing with an action under the Virginia Retail Franchising Act, Va. Code § 13.1–557 *et seq.* (Repl. Vol. 1978). In that case, plaintiffs argued, among other things, that a failure on the part of the defendants to deal in good faith constituted a cause of action as a violation of Va. Code § 13.1–558, the policy section of the Virginia Retail Franchising Act. That section provides as follows:

> It is hereby declared to be the policy of the Commonwealth, through the exercise by the General Assembly of its power to regulate commerce partly or wholly within the Commonwealth of Virginia, to correct as rapidly as practicable such inequities as may exist in the franchise system so as to establish a more even balance of power between franchisors and franchisees; to require franchisors to deal fairly with their franchisees with reference to all aspects of the franchise relationship and to provide franchisees more direct, simple, and complete judicial relief against franchisors who fail to deal in a lawful manner with them.

Va.Code § 13.1–558 (Repl.Vol.1978).

The Court in *Principe* deferred judgment on the issue presented since under the particu-

lar posture of that case a determination of the existence of such a cause of action was not necessary. This issue is now squarely before the Court and the Court concludes that the enforcement of the public policy of Virginia, as expressed in Va.Code § 13.1–558, is to be achieved primarily by the utilization of the procedures set forth for the governance of franchise systems by the State Corporation Commission and by criminal sanctions.[13] Self–help by means of private civil actions are specifically provided for in the Act but have a narrow application. Section 13.1–571 provides for civil remedies only when there has been (1) an unlawful cancellation of a franchise; (2) undue influence to induce the surrender of a franchise right (§ 13.1–564); and (3) when a franchisee declares the franchise void (§ 13.1–565). With such a comprehensive and explicit enforcement scheme set forth in the statutes, the Court is inclined to believe that no additional cause of action for the breach of fiduciary duty in the franchise context can be implied from the policy statement.

The plaintiffs further contend that a cause of action for breach of fiduciary duty is implicit in Va.Code § 13.1–571(d) (Repl.Vol.1978). The Court disagrees. That section provides that "[t]he rights and remedies provided [in] this section shall be in addition to any and all other rights and remedies that may exist [in] law [and] equity." As the Court noted in *Principe* :

> Va.Code § 13.1–571(d) (1978 Repl.) in no way provides an additional remedy to plaintiffs under the Virginia Retail Franchising Act. It merely saves to plaintiffs any other remedies they may have at common law or in equity.

**12.** As the Court has heretofore concluded that First Management is not a "franchisee" for purposes of the Virginia Retail Franchising Act, Va. Code § 13.1–557, et seq. (Repl. Vol. 1978), the conclusion is inescapable that First Management is not a "franchisee" for purposes of asserting a cause of action for breach of fiduciary against Holiday Inns as a franchisor. Accordingly, Holiday Inns' alternative motion to

dismiss First Management from Count Seven for lack of standing must be GRANTED, regardless of the Court's ruling on the existence of a fiduciary relationship.

**13.** *See* Va.Code §§ 13.1–559 to –563; §§ 13.1–567 to –568; §§ 13.1–569 to –569.1; § 13.1–570; §§ 13.1–572 to –573 (Repl.Vol.1978 & Supp. 1980).

Therefore, a cause of action for the breach of fiduciary duty in the franchise context cannot be implied from Va.Code § 13.1–571(d).

Plaintiffs also rely heavily on *Arnott v. American Oil Company*, 609 F.2d 873 (8th Cir.1979), in which the Eighth Circuit held that "[i]nherent in a franchise relationship is a fiduciary duty." *Id.* at 881. In that case the Court found that ". . . Amoco breached its *'fiduciary' duty of good faith and fair dealing* with Arnott in terminating its lease agreement with Arnott without good cause . . ." *Id.* at 884 (emphasis added).

The Court has several problems with the Eighth Circuit's opinion in *Arnott*. Initially, the Court must note that *Arnott* is in the distinct minority of federal and State court decisions which have either rejected or failed to find the existence of a fiduciary duty in the franchise context.[14] In addition, the purported "fiduciary duty" in *Arnott* is in essence merely a "duty of good faith and fair dealing." *Arnott v. American Oil Company, supra*, at 884. It is not the fiduciary duty traditionally found in the trustee–beneficiary or attorney–client relationships that requires the utmost good faith and prohibits self dealing on the part of the fiduciary. The Virginia General Assembly, however, specifically "require[s] franchisors *to deal fairly* with their franchisees with reference to all aspects of the franchise relationship . . ." under Va. Code § 13.1–558 (emphasis added). When that duty of fair dealing is breached, a remedy is provided under the Act either by Commission action or criminal proceeding or, in a proper case, by a self–help civil remedy under § 13.1–571. As previously noted the civil remedy is not applicable in this case. Thus, it is not appropriate for this Court to elevate the duty of fair dealing to a fiduciary duty nor to create an additional cause of action for its breach.

Furthermore, the Court believes that the application of a fiduciary duty to a franchisor–franchisee relationship is inappropriate in any event. In this regard, the Court finds persuasive the following passage from Judge Bright's dissenting opinion in *Arnott*:

> The parties in this case entered into a business relationship, not a fiduciary relationship. Each party served the interest of the other, but each also quite properly sought its own interest.

*Arnott v. American Oil Company, supra*, at 891.

A franchise relationship is inherently a business relationship, not a fiduciary relationship. While Holiday Inns had a duty to deal fairly with Picture Lake, it did not have the duty of a fiduciary with all of the obligations and responsibilities pertaining thereto. As Count Seven of Picture Lake's complaint fails to state a claim upon which relief can be granted, Holiday Inns' motion to dismiss is GRANTED.

The amended complaint permitted hereinabove shall be filed within ten days of the entry hereof. Defendants' response shall be filed within ten days thereafter.

And it is so ORDERED.

---

**14.** For federal court decisions *see, e. g., Newark Motor Inn Corp. v. Holiday Inns, Inc.*, 472 F.Supp. 1143, 1151–53 (D.N.J.1979); *Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1053–54 (E.D.N.Y.1975); *In Re 7–11 Franchise Antitrust Litigation*, 1974–2 Trade Cas. ¶ 75, 429 at 98, 428 (N.D.Cal.1974); *Eaton, Yale & Towne, Inc. v. Sherman Industrial Equip. Co.*, 316 F.Supp. 435, 445 (E.D.Mo.1970).

For State court decisions, *see e. g., Mobil Oil v. Rubenfeld*, 48 A.D.2d 428, 370 N.Y.S.2d 943, 947 (1975); *Texaco, Inc. v. A.A. Gold Inc.*, 78 Misc.2d 1050, 357 N.Y.S.2d 951, 954–56, *aff'd*, 45 A.D.2d 1054, 358 N.Y.S.2d 973 (1974); *Noel Holding Corp. v. Carvel Dari–Freeze*, Sup., 140 N.Y.S.2d 640, 641 (1955); *William C. Cornitius, Inc. v. Dayton Wheeler*, 276 Or. 747, 556 P.2d 666, 670 (1976).