**KNAUZ CONTINENTAL AUTOS, INC., Plaintiff,**

v.

**LAND ROVER NORTH AMERICA, INC., as successor in interest to Range Rover of North America, Inc., Defendant.**

**No. 93 C 1719.**

United States District Court, N.D. Illinois, E.D.

Nov. 10, 1993.

---

Richard M. Karr, Jonathan Paul Geen, Hardt & Stern, P C, Chicago, IL, for plaintiff.

James K. Meguerian, Ann H. Theodore, D'Ancona & Pflaum, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Knauz Continental Autos, Inc. ("Knauz"), a motor vehicle dealer, brought suit against defendant Land Rover North America, Inc. ("Land Rover"), a motor vehicle distributor, contending that Land Rover's dealer incentive program violates sections 4(b) and 4(e) of the Illinois Motor Vehicle Franchise Act, 815 Ill.Cons.Stat. 710/1 et seq. Land Rover filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that its dealer incentive program does not violate the Illinois statute. In the alternative, Land Rover contends that if this court interprets the incentive program to violate section 4(e), then that section violates the Commerce Clause of the United States Constitution. This court has jurisdiction due to diversity of citizenship.[1] For the reasons hereinafter stated, we grant Land Rover's motion in part and deny it in part.

## FACTS

Defendant distributes automobiles to franchise dealers throughout the country. Plaintiff is a franchisee of Land Rover, authorized to sell and service Land Rover and Range Rover vehicles. In October 1990, defendant notified plaintiff of a new Customer Satisfaction Enhancement Program (the program). This three-part program provided dealerships with the opportunity to receive payments of between $800 and $1,700 per vehicle. At the same time that Land Rover began this program it raised the prices of each vehicle by $890.

Part 1 of this program provided dealers with reimbursements of between $150 and $600 per vehicle sold, based on dealers reporting certain information to Land Rover and participating in vehicle preparation and sales training.[2] Part 2 is service satisfaction, which Land Rover evaluates based on quarterly samples of 12 customers. Payments in this category also range between $150 and $600 per vehicle. Part 3 provides for a $500 per vehicle payment, regardless of performance, for service satisfaction. To qualify for this payment dealers must appoint a customer relations manager, provide customers with a free loaner car for their first warranty visit, and provide free pick-up and delivery for those customers whose vehicles require repeated warranty repairs. The program includes certain threshold qualifications for dealers to qualify for even the lowest award level. The Land Rover zone manager provides each dealer with a quarterly summary and review of performance.

## DISCUSSION

■ In count I, Knauz alleges that Land Rover's program is a "device" or "sales program" which results in some dealers paying a lower price for Land Rover's vehicles in violation of section 4(e)(2) of the Motor Vehicle Franchise Act. This portion of the statute states, in pertinent part, that it is a violation of the statute for a distributor

> to offer to sell or lease, or to sell or lease, any new motor vehicle to any motor vehicle dealer at a lower actual price therefor than the actual price offered to any other motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price or fail to make available to any motor vehicle dealer any preferential pricing, incentive, rebate, finance rate, or low interest loan program

1. Knauz is an Illinois corporation, with its principal place of business in Illinois. Land Rover is a Delaware corporation, with its principal place of business in Maryland. The amount in dispute, according to Knauz's well-pleaded complaint, exceeds $50,000.

2. The lowest payment in two of the three categories is for dealerships scoring in the lower 20% nationwide, while Land Rover awards the highest payment to those dealerships scoring in the top 20%. The program includes two additional categories for the remaining 60%, above and below average.

offered to competing motor vehicle dealers in other contiguous states.

Knauz argues that the term "actual price" in the statute means the effective price, after rebate, while Land Rover contends that "actual price" is the price Land Rover charges dealers for the vehicle and does not include the rebate.

Our starting point in deciding this issue is interpretation of the statute. The doctrine of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires us to look to the Illinois courts' interpretation of the statute. Unfortunately, neither the Illinois Supreme Court nor the Illinois Appellate Court have faced the issues raised by this case. Consequently, we must ascertain how the Illinois Supreme Court would interpret the provisions at issue here. *See Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759, 761 (7th Cir.1986).

■ Under Illinois law we must give effect to the legislature's intent. *Collins v. Board of Trustees,* 155 Ill.2d 103, 183 Ill.Dec. 6, 9, 610 N.E.2d 1250, 1253 (1993); *Antunes v. Sookhakitch,* 146 Ill.2d 477, 167 Ill.Dec. 981, 984, 588 N.E.2d 1111, 1114 (1992); *Harvel v. City of Johnson City,* 146 Ill.2d 277, 166 Ill.Dec. 888, 891, 586 N.E.2d 1217, 1220 (1992). We first look at the words of the statute, viewing the entire statute. *Collins,* 183 Ill.Dec. at 9, 610 N.E.2d at 1253; *Antunes,* 167 Ill.Dec. at 984, 588 N.E.2d at 1114. Where the statutory language is unclear, a court may consider the legislature's purpose in enacting the statute, including the "evils to be remedied." *Antunes,* 167 Ill.Dec. at 984, 588 N.E.2d at 1114; *see Harvel,* 166 Ill.Dec. at 891, 586 N.E.2d at 1220. A court also may look to the legislative history in interpreting a statute where its language is not clear. *Antunes,* 167 Ill.Dec. at 984, 588 N.E.2d at 1114. Where a statute does not provide specific definition of terms, we must give words their ordinary meaning.

Unfortunately, the Illinois legislature did not define the term "actual price" in the statute. Therefore, we look first to the wording of the statute. Taking section 4(e) in its entirety, we see that the term "actual price" appears in two clauses. Distributors may not charge one dealer a different "actual price" from another dealer. Further, distributors may not use any device such as sales promotion plans that result in different "actual prices" to different dealers. Surely, the term "actual price" must mean the same in both clauses. The only logical way to harmonize these two clauses is to interpret them together, which results in one conclusion: that sales promotion plans can affect the "actual price."

This reading of the statute raises the next question: whether Land Rover's program is a "sales promotion plan." To answer this question we read the third clause, prohibiting manufacturers from offering certain discount or rebate plans to dealers in other states without offering them in Illinois, together with the second clause. This shows the flaw in Knauz's argument because looking at the clear language of the third clause it appears that the General Assembly did not intend to prohibit incentive, and other such plans, so long as manufacturers also offered them in Illinois.

A more reasonable interpretation of the statute, reading all three clauses together, is that the General Assembly intended to prohibit those "sales promotion plans" where manufacturers discounted motor vehicles to some dealers but not others, to help specific, possibly favored, dealers. Thus, such plans which affect the price the dealer pays would be prohibited, but plans that are linked to dealer performance after receipt of the vehicle are allowed.

■ We also may use the dictionary to interpret statutes, *see People ex rel. Daley v. Datacom Systems Corp.,* 146 Ill.2d 1, 165 Ill.Dec. 655, 661, 585 N.E.2d 51, 57 (1991), and this supports the above interpretation. The dictionary defines the word "actual" as: "Real; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible. Opposed to potential, possible, virtual, theoretical, hypothetical, or nominal." *Black's Law Dictionary,* at 34 (6th ed. 1990). Applying this definition to the statute in question yields a reasonable interpretation. The price the General Assembly was concerned about was the real price paid by the

dealer as opposed to some theoretical invoice price.[3] *Cf. Lake County Grading Co. v. Great Lakes Agency, Inc.,* 226 Ill.App.3d 697, 168 Ill.Dec. 728, 730, 589 N.E.2d 1128, 1130 (1992) (using term "actual price" as different than "quoted price"); *O'Keefe v. Lee Calan Imports, Inc.,* 128 Ill.App.2d 410, 262 N.E.2d 758, 760 (1970) (using term "actual price" as different from "advertised price"). This interpretation does not, however, undermine the concept that the ultimate cost to the dealer can be affected by a program recognizing, in a non-discriminatory way, post-delivery performance.

■ This interpretation also is consistent with the scant legislative history. Senator Berman, the sponsor of SB1002, stated that the purpose behind the legislation was "to strike a more fair balance between the interest of the manufacturers of automobiles and the dealers...." Illinois Senate Debates, 81st General Assembly, Statement of Senator Berman, May 25, 1979, at 207. *See also* Statement of Representative Daniels, Illinois General Assembly Debates, 81st General Assembly, June 19, 1979, at 202 (purpose of the bill is to protect against unreasonable conduct). While we must construe this statute liberally to honor the General Assembly's intent to protect automobile dealers, *see Kawasaki Shop v. Kawasaki Motors Corp.,* 188 Ill.App.3d 664, 136 Ill.Dec. 4, 7–8, 544 N.E.2d 457, 460–61 (1989), *appeal denied,* 129 Ill.2d 564, 140 Ill.Dec. 671, 550 N.E.2d 556 (1990), there is no suggestion that the General Assembly intended this portion of the law as a vehicle to eliminate competition between dealers. Some, at least, of the services promoted by the plan, are clearly an additional expense for the dealer, for the benefit of the consumer. Providing additional training, particularly good service to customers, free loaners, free pick-up and delivery and the like, all increase the expenses of the dealer and benefit the Illinois consumer. It is highly improbable that the General Assembly, in enacting a statute to benefit dealers and consumers (815 ILCS 710/4), intended that such services, if provided, would have to be solely at the expense of the dealer without help from the manufacturer.

Based on our interpretation of section 4(e), we believe that the Land Rover program does not facially violate this section of the statute. For this reason we have no occasion to review the constitutionality of the statute.[4]

■ Finding no facial violation of section 4(e) does not end our inquiry. In count II, Knauz also argues that although Land Rover's program, on its face, does not violate section 4(e), Land Rover may apply the program in a way that violates section 4(b). Section 4(b) states:

It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

Knauz contends that the plan is arbitrary because evaluations are based on the "satisfaction" of Land Rover's representative, a subjective measure; the sample for customer surveys is too small statistically; only vehicles bought by customers living within an arbitrary distance, 60 miles, qualify for the program; the program is set up so that no matter how well a dealer actually performs, some dealers will end up with less money than others; and Land Rover instituted the

---

**3.** Any consumer with any experience buying a car knows that the real or actual price paid for an automobile rarely equals the sticker price.

**4.** Under Knauz's interpretation, were we to accept it, the third clause of section 4(e) would require manufacturers to offer incentive programs in Illinois that they offer outside Illinois, while the second clause would prohibit them from offering such programs in Illinois. The manufacturer could presumably satisfy both the requirement and the prohibition by not offering such programs anywhere. A law interpreted in such a manner, besides being nonsensical, would impact interstate commerce, even though the statute is facially neutral.

However, we take no position on the constitutionality of the statute under this hypothetical interpretation. Neither party has presented any evidence that the statute burdens interstate commerce, whether Illinois' interest in protecting its car dealers is legitimate, and if so, whether Illinois could accomplish this interest in a manner that impacts interstate commerce to a lesser degree. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

program to "coerce" dealers to fulfill "arbitrary preferences," such as submission of warranty claims, on a time schedule determined by Land Rover's zone manager.

■ Land Rover argues, however, that its policy reflects reasonable business judgment and discretion and that, so long as it acts in good faith, its conduct is not arbitrary, unconscionable or in bad faith.[5] While Land Rover may be correct, the procedural posture of this case requires that we deny Land Rover's motion with respect to count II. This is a motion to dismiss for failure to state a claim upon which this court can grant relief. We will not grant such a motion if there are any set of facts that would justify granting Knauz relief. *See Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991).

■ At this stage of the litigation we must accept Knauz's allegations as true and draw any reasonable inferences from those allegations in a light most favorable to Knauz. *See Johnson,* 943 F.2d at 16; *Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 414 (7th Cir.1986). Knauz need not prove its allegations at this time. Clearly, paragraph 17 of Knauz's complaint sets out a sufficient basis for a claim under section 4(b). *Cf. New Hampshire Automobile Dealers Assoc. v. General Motors Corp.,* 801 F.2d 528, 535 (1st Cir.1986) (overruling district court's grant of summary judgment where violation of similar statute was at issue). We deny Land Rover's motion to dismiss count II.

## CONCLUSION

For the reasons stated above, we grant Land Rover's motion to dismiss count I and deny its motion to dismiss count II.

---

**5.** Unlike Land Rover, we do not read *Kawasaki* to suggest that the exercise of reasonable business judgment insulates a manufacturer or distributor from violation of section 4(b). The *Kawasaki* court simply held that this defense was not applicable to the case. *See Kawasaki,* 136 Ill.Dec. at 10, 544 N.E.2d at 463.

Because this is a motion to dismiss we do not need to decide at this time how the Illinois

Supreme Court would interpret the terms "bad faith," "arbitrary" and "unconscionable." We note, however, that courts in other jurisdictions have interpreted these terms in a manner that supports Land Rover's position. *See Schott Motorcycle Supply Co. v. American Honda Motor Co.,* 976 F.2d 58, 63 (1st Cir.1992).