MICHAEL GUARDINO *et al.*, Plaintiffs-Appellants, v. CHRYSLER CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—96—3156, 1—97—0123 cons.

Opinion filed February 13, 1998.

Jay A. Canel and William H. Jones, both of Canel, Davis & King, of Chicago, for appellants.

Maurice J. McCarthy and James W. Fessler, both of Querrey & Harrow, Ltd., of Chicago, for appellee Chrysler Credit Corporation.

James R. Vogler and Todd A. Strother, both of Foley & Lardner, of Chicago, for appellee Chrysler Corporation.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, Michael Guardino and North Cicero Dodge, Inc. (NCD), brought suit to recover damages from defendants, Chrysler Corporation (Chrysler) and Chrysler Credit Corporation (Chrysler Credit). Plaintiffs claimed violations of the Illinois Motor Vehicle Franchise Act (the Act) (815 ILCS 710/1 *et seq.* (West 1992)); conspiracy to violate the Act; and breach of the implied covenant of good faith and fair dealing. The circuit court granted Chrysler Credit's section 2—615 motion to dismiss the claims against it and granted summary judgment to Chrysler on the claims against it. 735 ILCS 5/2—615 (West 1992). Plaintiffs now challenge those rulings as well as the circuit court's determination that they were not entitled to a jury trial on the claims brought under the Act.

For the reasons that follow, we affirm.

The facts, taken most favorably to plaintiffs, are as follows: In 1962, NCD, a franchised Dodge car and truck dealership, was established at 2662 North Cicero Avenue in Chicago. Robert Grim was the sole owner for several years. In November 1988, he sold 17% of his stock to Guardino. Guardino then became the new car manager.

In August 1991, Guardino sought approval from Chrysler to purchase the remaining shares of NCD and to take over as a Chrysler dealer. Guardino and a Chrysler representative prepared a working capital and operating investment guide and a proforma balance sheet as part of the application process. These documents indicated that a net working capital of $431,289 was required and, taking into account a $450,000 loan that Guardino had arranged, the dealership would have $448,495 in working capital under Guardino's proposal.

Guardino and Grim reached an agreement whereby Guardino would pay Grim $300,000 and $150,000 would go into the dealership as working capital. Before the deal was approved, however, Chrysler Credit informed Guardino that a "floor check" inspection revealed NCD was "out of trust" by about $150,000. (Chrysler Credit had a "wholesale floor plan" with NCD, which was the arrangement under which NCD purchased vehicles.) This meant that the dealership had sold about $150,000 in new vehicle inventory without remitting the proceeds to Chrysler Credit. Chrysler Credit advised Guardino that this shortfall would have to be remedied prior to the closing of the purchase.

Grim and Guardino then entered into an agreement whereby $150,000 of the proceeds of the purchase price for the dealership would be paid to Chrysler Credit rather than to Grim. The deal was approved and Chrysler and Guardino entered into a sales and service agreement in January 1992.

Sometime after the transfer, Guardino discovered that the dealership's books were not accurate. Several other cars were sold prior to closing, without Chrysler Credit having been paid for the obligation relating to them. This was in excess of the prior discovery. It was also discovered that the value of the used car inventory had been inflated. Guardino's new bookkeeper prepared a statement, reporting that the actual working capital at 1991 year end was approximately $28,000.

According to Chrysler's marketing plan, NCD was "nondesignated," meaning that if the dealership were to close, Chrysler would not try to replace it with another dealership at the same location. Guardino was not told of the designation prior to the transfer. Guardino testified that within two months of his purchase, he was called to the office of the zone manager, Jerry Greeley, for a meeting. He alleges that Greeley told him that NCD's location was "not viable" and stated that Chrysler wanted him to move the dealership. Guardino believed the location was viable. He further alleges that in the first 10 months after he took over, NCD sold more cars and trucks than the dealership sold for the entire year in both 1990 and 1991. However, he admitted that the dealership continued to lose money and that there was a continuing cash flow problem.

About nine months after Chrysler approved the transfer, Chrysler Credit issued an "initial trouble report" for NCD. On October 23, 1992, Chrysler Credit sent a letter to NCD stating that "an additional unencumbered and permanent cash investment of $276,000" was needed to support NCD's credit line. Chrysler Credit threatened to cancel the credit line.

Guardino obtained a commitment for an additional $175,000 loan, contingent on Chrysler agreeing to a dealership loan of $100,000 from its "Gillman" loan program. A Gillman loan is a loan from Chrysler, not Chrysler Credit, apparently given to assist dealers. Chrysler is not required to grant such loans, although a majority of these requests are honored. Chrysler denied the request. A memo summarizing the reasons for the denial referred to financial problems and noted NCD's "nondesignated" status.

In December 1992, Guardino attempted to sell the dealership's assets to Michael A. Christopolous and voluntarily terminate the dealer agreement. Guardino forwarded the buy/sell proposal to Chrysler around November 25, 1992. The proposal involved a move of the dealership to a new location nine blocks away. On December 23, 1992, Chrysler sent a letter to Guardino stating that it was still in the process of reviewing the proposal and was not in a position to approve at that time. The proposal was approved in mid-January 1993

and the transaction was ultimately consummated. However, allegedly because of the delay, Christopolous would not buy NCD's used car inventory.

On December 9, 1994, plaintiffs filed an amended complaint alleging violations of section 4(b)of the Act (for arbitrary and bad-faith conduct) and fraud against both Chrysler and Chrysler Credit. The circuit court granted Chrysler Credit's motion to dismiss with prejudice the claim against it for violation of the Act. The court denied a motion to dismiss the claim against Chrysler for violation of the Act. The court struck the fraud claims without prejudice and allowed plaintiffs to replead.

On May 19, 1995, plaintiffs filed a second amended complaint. Count I alleged that Chrysler violated sections 4(b) and 4(e)(6) (for refusing approval of the transfer). Count II alleged that Chrysler Credit breached its implied covenant of good faith with plaintiffs. Counts III and IV alleged fraud. The court struck count II with prejudice and count IV without prejudice. The court granted plaintiffs leave to replead the fraud claim.

On November 30, 1995, the circuit court denied plaintiffs' request to file a third amended complaint with counts against Chrysler Credit for breach of implied covenant and violation of the Act. On January 26, 1996, the court granted plaintiffs leave to file a one-count third amended complaint against Chrysler for alleged violations of the Act.

On February 23, 1996, plaintiffs filed their fourth amended complaint, alleging that Chrysler Credit conspired to violate the Act. The court granted Chrysler Credit's motion to dismiss that claim with prejudice and plaintiffs appealed (case No. 1—96—3156). Both the one-count third amended complaint and the one-count fourth amended complaint contained footnotes stating that plaintiffs did not "intend by filing this pleading to waive their objections to previous dismissal orders of previous pleadings."

On December 18, 1996, the court granted summary judgment to Chrysler. The court also determined that plaintiffs had no right to a jury trial on the claims brought under the Act. Plaintiffs appealed (case No. 1—97—0123) and this court consolidated the appeals.

■ Plaintiffs first argue that the circuit court erred in granting summary judgment to Chrysler. Summary judgment shall be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). The circuit court must construe all pleadings, depositions, admissions and affidavits strictly against

the moving party and liberally in favor of the opponent. *Dockery v. Ortiz*, 185 Ill. App. 3d 296, 304-05 (1989). Our review of a summary judgment ruling is *de novo*. *McNamee v. State of Illinois*, 173 Ill. 2d 433, 438 (1996).

■ Plaintiffs contend that summary judgment was improper because several fact questions remain as to whether Chrysler violated section 4(b) of the Act. That section makes it a violation

> "for any manufacturer *** to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public." 815 ILCS 710/4(b) (West 1992).

Few cases have substantively addressed claims under this section. See *Kawasaki Shop of Aurora, Inc. v. Kawasaki Motors Corp., U.S.A.*, 188 Ill. App. 3d 664 (1989) (verdict finding a section 4(b) violation was not against the manifest weight of the evidence); see also *Olympic Chevrolet, Inc. v. General Motors Corp.*, 959 F. Supp. 918, 927 (N.D. Ill. 1997) (granting summary judgment to defendant on claims brought under sections 4(b) and 4(d)(1) of the Act because plaintiff failed to raise an issue of material fact); *Knauz Continental Autos, Inc. v. Land Rover North America, Inc.*, 842 F. Supp. 1034 (N.D. Ill. 1993) (refusing to dismiss a claim brought under section 4(b)).

Plaintiffs allege that Chrysler violated section 4(b) when it: (1) approved the transfer of the sale of the dealership to Guardino; (2) denied the Gillman loan; and (3) delayed approval of the buy/sell to Christopolous. Chrysler asserts, however, that legitimate business reasons led to its decisions on the contested actions and argues that plaintiffs failed to present anything more than conclusions to show that they could prevail at trial. We agree.

■ Plaintiffs contend that Chrysler acted in violation of section 4(b) when it approved the sale of the dealership to Guardino because it knew, or at least should have known, that the $150,000 paid to Chrysler Credit only partially paid down the floor plan and the dealership was undercapitalized. Guardino admits, however, that the prior owner was submitting false financial statements to Chrysler and it was only after he purchased the dealership and discovered the inaccuracies that this information came to light. He asserts that Chrysler "should have known" of the poor financial situation because it had the ability to check. He does not provide anything to show that Chrysler in fact knew there were false records or that Chrysler suspected this was an undercapitalized situation and purposefully failed to examine it. Guardino and a Chrysler representative prepared the financial report relied upon for the approval and according

to that information it appeared to be sufficiently capitalized. Not only Chrysler, but Guardino himself, relied on these reports when deciding to enter into the transfer agreement. The burden of determining whether the investment was appropriate falls upon Guardino's shoulders, not Chrysler's. Plaintiffs have failed to provide facts showing that Chrysler acted arbitrarily, in bad faith or unconscionably when it approved the sale to Guardino.

Plaintiffs allege that when the dealership was losing money and after it was discovered that the prior owner's bookkeeping was inaccurate and Chrysler Credit required additional capital, Chrysler acted arbitrarily, in bad faith and unconscionably when it denied the dealership a loan. Plaintiffs do not assert that Chrysler was required to approve the loan. The memo regarding the denial asserts several reasons for Chrysler's action, including the financial situation of the dealership as well as the fact that the site was "nondesignated." While Chrysler may have decided it would not be a sound business decision to grant a loan to a dealership that was losing money and financially weak and in a location that Chrysler did not believe was viable, this does not indicate that Chrysler acted arbitrarily, in bad faith or unconscionably.

Plaintiffs allege that Chrysler acted in violation of section 4(b) when it delayed in approving the sale of NCD's assets to Christopolous. Plaintiffs contend that the delay was to purposefully ruin the deal for them, but they provide no facts to support this contention. The record indicates that Chrysler was reviewing the deal and obtaining information from Christopolous during the month of December. Plaintiffs have not pointed to anything that would indicate an intentional delay of the approval, nor is there anything beyond speculation to suggest an intent to harm plaintiffs during consideration of this proposal.

Plaintiffs also contend that Chrysler violated section 4(e)(6) of the Act when it initially rejected the buy/sell proposal. Section 4(e)(6) makes it a violation for a manufacturer

> "to refuse to give effect to or prevent or attempt to prevent *** any motor vehicle dealer or any officer, partner or stockholder of any motor vehicle dealer from selling or transferring any part of the interest of any of them to any other person *** unless such sale or transfer is to a transferee who would not otherwise qualify for a new motor vehicle dealers license *** or unless the franchiser, having the burden of proof, proves that such sale or transfer is to a person or party who is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of

the dealership, uniformly applied minimum business experience standards in the market area. However, where such a rejection of a transfer is made the manufacturer shall give written notice of his reasons to the dealer within 30 days of notice to the manufacturer by the dealer of the proposed transfer." 815 ILCS 710/4(e)(6) (West 1992).

Chrysler admits it received the buy/sell proposal "no earlier than" November 25, 1992. On December 23, 1992, it sent a letter to Guardino stating that it was "still in the process of reviewing this proposal," and it declined approval "for the time being." This letter did not contain the permissible reasons for rejection listed in the statute. The deal was not approved until mid-January 1993, over 30 days from the time of receipt.

Chrysler incorrectly argues that section 4(e)(6) of the Act does not apply to the proposal here because this was not a sale of a "part" of the dealership. Rather, the proposal established a successor franchise with a new franchise agreement, along with NCD's voluntary termination, which is not within the purview of section 4(e)(6). Chrysler contends that under section 4(e)(11) it had 60 days to approve the proposal. That section makes it a violation for a manufacturer .

> "to prevent or refuse to approve a proposal to establish a successor franchise at a location previously approved by the franchiser when submitted with the voluntary termination by the existing franchisee [unless for several certain enumerated reasons]. However, when such a rejection of a proposal is made, the manufacturer shall give written notice of its reasons to the franchisee within 60 days of receipt by the manufacturer of the proposal." 815 ILCS 710/4(e)(11) (West 1992).

By its terms, section 4(e)(11) is not applicable to the instant case because this was not a proposal to establish a successor franchise "at a location previously approved by the franchiser." We also conclude, however, that section 4(e)(6) is not applicable to the case at hand because the language of that section applies only to a transfer of an equity interest, which allows the original business entity who is the franchisee to continue. The transfer contemplated by the Christopolous transaction was not a sale of stock or a sale of a partnership interest.

Section 4(e)(11) would have been the appropriate provision governing this transaction except for the requirement that the dealership location be modified. The transaction here involved the sale of the dealership assets, a voluntary termination of the dealership and transferring the dealership to a new location. Neither section directly

applies to the facts presented. We agree with the circuit court that summary judgment must be entered for Chrysler on these claims.

■ Plaintiffs next challenge the dismissal of their claims against Chrysler Credit. A section 2—615 motion for dismissal should not be granted unless it clearly appears that no set of facts could be proved that would entitle plaintiffs to recovery. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). "In ruling on such a motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *Mt. Zion*, 169 Ill. 2d at 115. We review such orders *de novo* (*Estate of Strocchia v. City of Chicago*, 284 Ill. App. 3d 891, 898 (1996)), and all well-pleaded facts and reasonable inferences are taken as true. *Mt. Zion*, 169 Ill. 2d at 115.

Chrysler Credit claims that plaintiffs waived their right to object to the orders dismissing count II of the second amended complaint (alleging that it breached the implied covenant of good faith) and count II of the amended complaint (alleging that it violated section 4(b) of the Act) because plaintiffs' subsequent complaints did not incorporate those previous pleadings by reference.

■ It is well established that a party who files an amended pleading waives any objection to the circuit court's ruling on former complaints. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983); *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 799 (1992). Where an amended complaint is complete in itself and does not refer to or adopt a prior pleading, the prior pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. *Foxcroft*, 96 Ill. 2d at 154; *Du Page*, 229 Ill. App. 3d at 799.

■ When plaintiffs filed their one-count third amended complaint against Chrysler for violations of the Act and their one-count fourth amended complaint against Chrysler Credit for conspiracy, they included a footnote, stating that they did "not intend by filing this pleading to waive their objections to previous dismissal orders of previous pleadings." Plaintiffs contend that this language preserved their claims for the purposes of review.

In *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 311-12 (1996), the plaintiff's amended complaint contained a footnote stating that the prior complaints were attached to preserve the previously dismissed claims for appeal. The court found this sufficient to preserve issues for review despite the fact that Saunders failed to attach those documents. *Saunders*, 278 Ill. App. 3d at 312. Because plaintiffs in the instant case referred to the prior orders for

the express purpose of preserving objections, we do not believe this constituted waiver. Nevertheless, we affirm the dismissals.

■ Chrysler Credit argues that it is not subject to section 4(b) of the Act, which only prohibits violative conduct by a "manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer." 815 ILCS 710/4(b) (West 1992). Plaintiffs contend that Chrysler Credit is subject to that section because it is a factory representative. We agree.

A "factory representative" is defined as

"a representative employed by a manufacturer or employed by a factory branch for the purpose of making or promoting the sale of motor vehicles or for contracting with, supervising, servicing or instructing motor vehicle dealers or prospective motor vehicle dealers." 815 ILCS 710/2(e) (West 1992).

We believe Chrysler Credit falls within this definition, particularly where, as in this case, it is able to stop Chrysler from approving the initial sale from Grim because of a sum due to Chrysler Credit. Regardless, plaintiffs have failed to plead facts supporting a section 4(b) claim against Chrysler Credit. The factual allegations against Chrysler Credit center on its insistence that it be paid for vehicles that plaintiff admits in his complaint were "out of trust." Plaintiffs do not assert that Chrysler Credit was not entitled to be paid for these cars. Requiring plaintiffs to pay sums due for out-of-trust cars and to have a certain level of capital before continuing to provide a line of credit does not support a claim of bad faith, arbitrary or unconscionable conduct. Because the complaint fails to plead facts regarding violative action by Chrysler Credit, we affirm the dismissal.

■ Plaintiffs also contend the circuit court erred in dismissing count II of the second amended complaint, involving a breach of the implied covenant of good faith. While every contract in Illinois contains an implied covenant of good faith, it is not an independent source of duties for the parties to the contract. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995); see *Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267 (1991) (while the obligation of good faith exists in every contract in Illinois, "it is essentially used as a construction aid in determining parties' intent" and does not form an independent tort).

■ Plaintiffs also assert a claim for conspiracy against Chrysler Credit. Civil conspiracy is a "combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). A plaintiff must allege not

only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. *Adcock*, 164 Ill. 2d at 63.

Plaintiffs' fourth amended complaint alleges that Chrysler Credit conspired with Chrysler to violate section 4(b) of the Act, that is, they conspired to act arbitrarily, in bad faith, and unconscionably with regard to plaintiffs. It does not, however, plead facts to support such a claim. While the complaint states that Chrysler Credit acted with Chrysler to put the dealership out of business in bad faith, there are no facts to support that assertion. As discussed, the complaint asserts that Chrysler Credit required payment for "out of trust" vehicles for which Chrysler Credit was entitled to receive payment. We affirm dismissal of these claims.

For the foregoing reasons, we affirm the circuit court's grant of summary judgment to Chrysler and its dismissal of the claims against Chrysler Credit. Because this ruling disposes of the matter, we need not address the jury trial issue.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.